UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| PATRICK CORRIVEAU,<br>    Plaintiff,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE<br>COMPANY A/K/A FM GLOBAL,<br>    Defendant. | C.A. No. 1:24-cv-422-JJM-LDA |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Plaintiff Patrick Corriveau sues his former employer, Defendant Factory Mutual Insurance Company ("FM"), alleging unlawful religious discrimination, retaliation, and failure to engage in the interactive process. ECF No. 10. FM moves to dismiss Mr. Corriveau's First Amended Complaint ("Complaint") for failure to state a claim.[1] ECF No. 18. For the reasons stated below, the Court DENIES FM's Motion to Dismiss.

---

[1] Mr. Corriveau initially sued an entity separate and distinct from defendant FM—FM Global Services LLC. FM Global Services LLC moved to dismiss Mr. Corriveau's original Complaint, asserting: (1) it was not Mr. Corriveau's employer, and (2) Mr. Corriveau had not exhausted his administrative remedies as to FM Global Services LLC. ECF No. 5. The Court denied the motion without prejudice after Mr. Corriveau amended his complaint to add defendant FM, *see* ECF No. 10, and, ultimately, Mr. Corriveau voluntarily dismissed FM Global Services LLC from the case, ECF No. 16.

I.  BACKGROUND[2]

Mr. Corriveau worked for FM as a Solution Architect from 2005 until his termination in 2024. The sequence of events that led to his termination started in October 2021, when Mr. Corriveau received emails from FM that instructed its employees to upload proof of COVID-19 vaccination. ECF No. 19 at 1. At that point, Mr. Corriveau had not received the COVID-19 vaccine due to his "religious beliefs." *Id.* Thus, Mr. Corriveau reached out to his supervisor, Geoff Rainville, to ask about FM's vaccine policy and the consequences of not receiving the COVID-19 vaccine. *Id.* Unsure about the answer to these inquiries, Mr. Rainville told Mr. Corriveau he

---

[2] The Court takes the facts from Mr. Corriveau's Complaint, his Charge of Discrimination ("Charge") that he filed with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC"), and FM's position statement filed with the RICHR and the EEOC. ECF Nos. 10, 6, 8-2. The latter two documents were not appended to or incorporated into Mr. Corriveau's Complaint. Generally, at the motion to dismiss stage, a court may not consider documents "that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). But there are narrow exceptions to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Watterson*, 987 F.2d at 3).

The Court may consider Mr. Corriveau's Charge and FM's position statement—without converting this motion into one for summary judgment—because those documents were filed with the RICHR, and thus are official public records. *See* R.I. Gen. Laws § 38-2-2(4) ("'public records' shall mean all documents . . . made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency."). Further, the parties do not dispute the authenticity of Mr. Corriveau's Charge or FM's position statement, and Mr. Corriveau referenced both documents in his Amended Complaint, ECF No. 10 ¶¶ 53, 54, which are additional bases supporting the Court's consideration of these documents at this stage. *See Alternative Energy*, 267 F.3d at 33.

would get back to him. *Id.* Nonetheless, Mr. Corriveau's inquiries were answered when he discovered that FM sent a notice to employees that full COVID-19 vaccination was required for employment at FM. *Id.* at 2.

A week later, Mr. Corriveau informed Mr. Rainville that he wanted to pursue an exemption from FM's vaccine policy. ECF No. 8-2 at 3. Mr. Rainville promptly connected him with Human Resources Business Partner Lauren Henderson, who sent Mr. Corriveau a religious exemption form to complete. *Id.* Mr. Corriveau timely submitted the form, stating therein that "God created me with an immune system and I will not alter his design. It is a sin to allow unwanted intrusions into my body which is a temple of the Holy Spirit." *Id.* at 4. A day later, Ms. Henderson emailed Mr. Corriveau and requested additional information and provided a questionnaire for Mr. Corriveau to complete. *Id.* The questionnaire included the following questions:

1) Given what we have noted in our letter to you dated December 6, 2021, please clarify the precise connection between your religious principle, practice, tenet or belief and your inability to receive a COVID-19 vaccine and why;
2) In support, please provide an independent statement of religious doctrine, from an authoritative religious leader or body where your religion has same, explaining what prohibits followers of your religious principle, practice, tenet or belief from receiving a COVID-19 vaccine;
3) Since the age of 18, have you received any vaccination(s); and
4) Since the age of 18, have you taken any pharmaceutical(s) (drugs), whether prescription or nonprescription (over the counter).

*Id.* at 5. Mr. Corriveau submitted the completed questionnaire. His response to question 1 reiterated his responses in his religious exemption form, as he stated that his "body is the temple of the Holy Spirit and [he] will not defile it by taking an unwanted mRNA vaccine which would modify [his] God-given immunity system." *Id.*

In response to question 2, Mr. Corriveau stated that this was his "individual soul beliefs" and thus, he did not provide a statement from an authoritative religious leader to support his exemption request. *Id.* Additionally, Mr. Corriveau included a link to the Equal Employment Opportunity Commission's ("EEOC") guidance on religious discrimination. *Id.* Lastly, Mr. Corriveau answered "yes" to questions 3 and 4, confirming that he has taken other vaccinations and pharmaceutical drugs. *Id.*

The day after Mr. Corriveau submitted the completed questionnaire, Ms. Henderson contacted him via Teams to tell him that FM denied his religious exemption request. ECF No. 10 ¶ 41. In response, Mr. Corriveau shared concerns about the questionnaire and requested an appeal of the denial, but his request was promptly denied. *Id.* ¶ 42. When he asked the reasons for the denial, Mr. Corriveau was informed that such reasons were not provided. *Id.* ¶ 43. Eventually, after Mr. Corriveau failed to comply with the COVID-19 vaccination requirement, FM terminated him on January 4, 2022. *Id.* ¶ 46.

Ultimately, Mr. Corriveau filed a Charge against FM with the Rhode Island Commission for Human Rights ("RICHR") and the EEOC and has since exhausted his administrative remedies. ECF No. 10 ¶¶ 53, 55. Thus, Mr. Corriveau now brings this suit, claiming FM discriminated against him based on his religion, retaliated against him for engaging in protected activity, and failed to engage in the interactive process. ECF No. 10 ¶ 58. Mr. Corriveau asserts that these actions violated: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; (2) the Rhode Island Fair Employment Practices Act (RIFEPA), R.I. Gen. Laws § 28-5-1 et seq.; and (3) the

Rhode Island Civil Rights Act (RICRA), R.I. Gen. Laws § 42-112-1 et seq. *Id.* FM moves to dismiss. ECF No. 18.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("[C]ombined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

5

## III. DISCUSSION

FM argues that the Court should dismiss Mr. Corriveau's Complaint, with prejudice, because he has neither provided adequate factual and legal support for his asserted claims and conclusions nor stated "facially plausible claims of religious discrimination, retaliation, and failure to engage in the interactive process." ECF No. 18-1 at 1-2. The Court addressed each argument in turn.[3]

### A.   Retaliation Claims

To succeed on a retaliation claim under Title VII, RIFEPA, and RICRA, a plaintiff must prove that "(1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." *Stratton v. Bentley Univ.*, 113 F.4th 25, 41-42 (1st Cir. 2024) (quoting *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007)). The Supreme Court has held that this is a "but-for" test. *Carvalho v. Santander Bank, N.A.*, 573 F. Supp. 3d 632, 645 (D.R.I. 2021) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)) ("a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action."). A plaintiff need not prove "all elements of the prima facie case" at the motion to dismiss stage, but "must simply allege facts that give rise to a plausible inference that retaliation occurred." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263,

---

[3] Title VII's analytical framework is routinely applied to RIFEPA and RICRA claims. *Horn v. S. Union Co.*, No. C.A. 04-434S, 2008 WL 2466696, at *7 n.5 (D.R.I. June 18, 2008). Thus, Mr. Corriveau's religious discrimination and retaliation claims under Title VII, FEPA, and RICRA will be analyzed using Title VII caselaw.

6

276-77 (1st Cir. 2022) (citing *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014)).

FM contends that Mr. Corriveau's retaliation claims are factually deficient, asserting that he merely proffered a legal conclusion when stating that FM "retaliated against [him] for engaging in protected activity" that included "filing a religious exemption form and choosing not to receive the COVID-19 vaccine." ECF No. 18-1 at 4 (quoting ECF No. 10 ¶¶ 56, 58). FM argues that such a legal conclusion that lacks any factual support cannot sustain a retaliation claim. *Id.* Additionally, FM argues that Mr. Corriveau failed to "plausibly allege a causal link between his exemption request and subsequent termination" as necessary to satisfy his burden of alleging an adequate retaliation claim. *Id.*

Mr. Corriveau counters that he has provided sufficient factual allegations to support his assertion that FM retaliated against him. He argues that he pled sufficient facts demonstrating he engaged in protected conduct when: "(1) requesting a religious exemption from the COVID-19 vaccination policy, (2) vocally opposing and challenging the denial of his exemption request to HR, and (3) continuously opposing Defendant's vaccination policy by refusing to receive the vaccine." ECF No. 19 at 7. Additionally, Mr. Corriveau asserts that he illustrated that he suffered an adverse employment action when he pled that FM terminated him. *See id.* at 7-8. Lastly, he contends that he pled sufficient facts establishing that FM terminated him because of his protected activity since FM terminated him "within a month of filing his

7

religious exemption request, him opposing and challenging the denial of his request, and his continued refusal to receive the vaccine on religious grounds." *Id.* at 8.

The Court starts with Mr. Corriveau allegations that he engaged in protected activity. "An employee has engaged in activity protected by Title VII if she has . . . 'opposed any practice made an unlawful employment practice' by Title VII . . . ." *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). A plaintiff "need not prove that the conditions against which [s]he protested actually amounted to a violation of Title VII" and "must demonstrate only that [she] had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Id.* (citations and quotations omitted). Here, it is unclear whether Mr. Corriveau's act of "merely requesting a religious exemption to a mandatory vaccination policy constitutes protected conduct for the purpose of a Title VII retaliation claim . . . ." *Moore v. Health Care & Rehab. Servs. of Se. Vermont, Inc.*, No. 24-CV-031-SE-TSM, 2024 WL 4285898, at *5 (D.N.H. Sept. 25, 2024). But the record gives rise to the inference that Mr. Corriveau opposed what he reasonably believed was unlawful religious discrimination in FM's exemption process when he added a link to the EEOC's guidance on religious discrimination to his questionnaire response and raised concerns about the questionnaire to Ms. Henderson. Thus, Mr. Corriveau has plausibly alleged that he engaged in protected conduct.

As to the next retaliation element, there is no dispute that Mr. Corriveau suffered an adverse employment action when FM terminated him. As for the final

8

retaliation element, causation, Mr. Corriveau alleges he was terminated on January 4, 2022—mere weeks after he challenged the inquiries into his religious beliefs via the questionnaire. At this early stage of litigation, such a close temporal proximity is sufficient to create an inference of a causal link between Mr. Corriveau's protected activity and the adverse employment action he suffered. *See DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008) (quoting *Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007)) ("our law is that temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'"); *see also Mariani-Colon*, 511 F.3d 2224 (1st Cir. 2007) (holding that temporal proximity between plaintiffs protected conduct and termination two months later sufficiently showed causation).

These alleged facts, taken as true, establish a prima facie case of retaliation that is plausible on its face. Accordingly, the Court DENIES FM's Motion to Dismiss Mr. Corriveau's retaliations claims.

B. Religious Discrimination Claims

The Court now turns to Mr. Corriveau's religious discrimination claims. To establish a religious discrimination claim, a plaintiff must show that: (1) "a bona fide religious practice conflicted with an employment requirement," (2) he brought the practice to his employer's attention, and (3) "the religious practice was the basis for the termination." *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 131 (1st Cir. 2004). For a plaintiff to establish that they have a "bona fide religious belief," they must demonstrate "both that the belief or practice is religious and that it is sincerely

9

held." *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002)

FM takes issue with the first prong, asserting that Mr. Corriveau has neither included any facts identifying his sincerely held, bona fide religious beliefs or practices nor illustrated how such beliefs or practices conflict with FM's vaccination requirement. ECF No. 18-1 at 6-7. But Mr. Corriveau's responses to the religious exemption form and questionnaire set forth beliefs that: (1) he asserts are religious, and (2) conflict with FM's vaccination requirement. He alleges his beliefs are that: "God created me with an immune system and I will not alter his design. It is a sin to allow unwanted intrusions into my body which is a temple of the Holy Spirit;" and that his "body is the temple of the Holy Spirit and [he] will not defile it by taking an unwanted mRNA vaccine which would modify [his] God-given immunity system." ECF No. 8-2 at 4, 5. A plausible reading of Mr. Corriveau's assertions is that he believes his body is a temple of God that would be sinfully violated if he received the COVID-19 vaccine. His references to "God" and "the Holy Spirit" are sufficient to create a reasonable inference that his beliefs are religious. And it is plausible to infer that Mr. Corriveau's religious beliefs were sincerely held, based on his allegations that he continued refusing to obtain the COVID-19 vaccine—even at the risk of termination. Lastly, Mr. Corriveau's assertions that he believes taking the mRNA COVID-19 vaccine would "defile" the "temple of the Holy Spirit"—his body—plausibly supports that his request to be exempted from FM's vaccine policy was based on his religious belief, observance, or practice. "At this nascent stage of the litigation, [Mr.

10

Corriveau] need allege no more facts -- nor more specific ones -- to show that [he] holds sincere religious beliefs that conflicted with the vaccination requirement." *Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 84 (1st Cir. 2025) (citing *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1011 (7th Cir. 2024)).[4] Thus, the Court DENIES FM's Motion to Dismiss Mr. Corriveau's religious discrimination claims.

### C. Failure to Engage in the Interactive Process Claim

Last at issue is Mr. Corriveau's claim that FM failed to engage in the interactive process. "The Supreme Court has noted that 'bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business.'" *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 442 (D. Mass. 2021) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)). "[L]iability for failure to engage in an interactive process depends on a finding that the parties could have discovered and implemented a reasonable accommodation through good faith efforts." *Id.* (quoting *Does 1-6 v. Mills*, 16 F.4th 20, 36 (1st Cir. 2021)). An employers "empty gestures" do not satisfy the "good faith standard." *Id.* at 438 (quoting *EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014)). On the other hand, an employer's refusal to grant the requested accommodation, by itself, does not give rise

---

[4] FM sought to dismiss Mr. Corriveau's claim based on its assertion that he did not provide sufficient factual allegation to support the first element of a religious discrimination claim. *See* ECF No. 18-1 at 6-7. FM does not appear to advance any dispute about whether Mr. Corriveau provided adequate factual allegations to support the other two elements of religious discrimination. Thus, the Court limits its motion to dismiss analysis only to the first prong.

11

to bad faith if the employer made "an earnest attempt to discuss other potential reasonable accommodations." *Id.* at 438 (quoting *Kohl's Dep't Stores, Inc.*, 774 F.3d at 133).

FM argues that Mr. Corriveau has not set forth factual allegations showing that FM failed to engage in the interactive process. ECF No. 18-1 at 7. Rather, FM asserts that Mr. Corriveau's complaint illustrates that FM did engage in the interactive process because his allegations show that FM considered his religious exemption requests and followed up with more questions before rendering its determination. *See id.* at 7-8. But Mr. Corriveau's allegations do not assert that FM did not engage in any process at all in response to his religious exemption request. Instead, Mr. Corriveau alleges that FM did not "*meaningfully* engage in the interactive process to accommodate his request." ECF No. 10 ¶ 50. He asserts that FM denied his request for religious exemption without "any explanation nor opportunity to appeal." *Id.* ¶ 49. Additionally, Mr. Corriveau alleges that it would not have been unreasonable or against policy for FM to grant his religious exemption request because "the mere existence of a process and form to request" such an exemption illustrates that FM had a policy in place to accommodate such exemptions. Taking these allegations as true and drawing all reasonable inferences therefrom, it is plausible to infer that, when FM denied Mr. Corriveau's exemption request without any provided reason or means to appeal, FM did not make "an earnest attempt to discuss other potential reasonable accommodations." *Together Emps.*, 573 F. Supp. 3d at 438 (citing *Kohl's Dep't Stores, Inc.*, 774 F.3d at 133). It is also plausible to

infer that FM had reasonable accommodations available for those who could not comply with its vaccine policy considering FM had a process in which employees could seek religious exemption from the policy. Accordingly, Mr. Corriveau has pled sufficient facts supporting an inference that FM failed to engage in the interactive process when alleging FM failed to make a good-faith attempt to identify any available reasonable accommodations in response to his religious exemption request. Thus, the Court DENIES FM's Motion to Dismiss Mr. Corriveau's failure to engage in the interactive process claim.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES FM's Motion to Dismiss. ECF No. 18.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

April 3, 2025