## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

PATRICK CORRIVEAU,                )
     Plaintiff,                )
                             )

 v.                               )
                             )        C.A. No. 1:24-cv-00422-JJM-AEM

FACTORY MUTUAL INSURANCE          )
COMPANY a/k/a FM GLOBAL,          )
     Defendant.                )
                             )

## MEMORANDUM AND ORDER

AMY E. MOSES, United States Magistrate Judge.

Plaintiff Patrick Corriveau began working at defendant FM Global in May 2005 as a Solution Architect. ECF No. 10 at 4. In response to a requirement that all its employees provide proof of vaccination from COVID-19, Mr. Corriveau sought an exemption based on his religious beliefs, and his request was denied. *Id.* at 5, 6, 7. FM Global terminated him shortly thereafter. *Id.* at 7. Mr. Corriveau filed suit against FM Global, alleging that he was discriminated against because of his religion and retaliated against for engaging in protected activity. *Id.* at 9.

This matter is before the Court on two discovery motions: Plaintiff's Motion to Quash Subpoena Duces Tecum and, in the Alternative, Motion for Protective Order (ECF No. 32) and Plaintiff's Motion to Compel Discovery (ECF No. 33). FM Global objected to both (ECF Nos. 39 and 38) and Plaintiff filed replies (ECF Nos. 41 and 40).

**I.    Plaintiff's Motion to Quash Subpoena Duces Tecum and, in the Alternative, Motion for Protective Order**

Mr. Corriveau moves to quash 15 subpoenas duces tecum (document subpoenas) served by FM Global on third-party employers, recruiters, and related entities, as well as two deposition subpoenas, one directed at his wife and the other at his recruiter, for numerous reasons, including that they are improper, overbroad, disproportionate, duplicative, an undue burden, and an invasion of his privacy.  ECF No. 32.  FM Global objects, contending the 15 document subpoenas seek relevant, non-privileged information from entities that Mr. Corriveau "claims he applied to, interviewed with, and/or received job offers from after he separated from his employment with FM [Global]" and are primarily relevant to his duty to mitigate damages.  ECF No. 39 at 1, 9-10. FM Global contends that the two deposition subpoenas are for individuals Mr. Corriveau identified as witnesses.  *Id.* at 1.

**A.  Standard**[1]

"A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)."  *Smith v. Turbocombustor Tech., Inc.*, 338 F.R.D. 174, 176 (D. Mass. 2021) (citation omitted).  Therefore, "the information sought must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) proportional to the needs of the case."  *Id.* (citing Fed. R. Civ. P.

---

[1] FM Global contends that Mr. Corriveau cannot challenge the subpoenas because he lacks standing to do so and because he filed too late.  ECF No. 29 at 6-9.  Mr. Corriveau has standing to move to quash these non-party subpoenas because they would require production of information he shared with the non-parties and they implicate his rights and privileges.  *See Ponder v. Ocwen Loan Servicing, LLC*, No. CV 19-MC-91215-ADB, 2019 WL 2249675, at *2 (D. Mass. May 24, 2019).  Although Mr. Corriveau "did not demonstrate perfect diligence," he provided prompt, detailed objections to the numerous subpoenas via letter to FM Global's counsel (ECF No. 41-1). *See Pons v. Walter Kidde Portable Equip. Inc.*, No. 1:25-MC-91106-JEK, 2025 WL 1424519, at *3 (D. Mass. May 16, 2025).  Under these circumstances, the Court finds Mr. Corriveau's slight delay excusable and therefore deems his motion timely filed.

26(b)(1)).  A court "must quash or modify a subpoena that," among other things, "requires disclosure of privileged or other protected matter, if no exception or waiver applies;" "subjects a person to undue burden;" or exceeds the scope of discovery.  Fed. R. Civ. P. 45(d)(3)(A) and 26(b)(1).

### B.  Document Subpoenas

The subpoena directed to HarbourVest, Mr. Corriveau's current employer, does not pertain to his attempts to mitigate his damages.  It may, however, have a "direct negative effect" on his employment relationship.  *See E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, *3 (D. Mass. 2014) ("courts have recognized that subpoenas directed at litigants' employers concerning disputes with past employers can have a direct negative effect on present employment and should be used only as a last resort" (internal quotation marks and citation omitted)).  In addition, Mr. Corriveau has convinced the Court that subpoenaing HarbourVest is not being done as a "last resort" and that the information sought for HarbourVest is neither relevant nor proportional to the needs of the case.  Therefore, Mr. Corriveau's motion as to the HarbourVest is GRANTED and the subpoena directed to HarbourVest is QUASHED.

Harley Davidson Motor Company, Inc. responded to its subpoena stating that it did not have responsive documents.  ECF No. 39 at 3 n.2.  Mr. Corriveau's Motion as to Harley Davidson is DENIED AS MOOT.

The remaining 13 document subpoenas essentially seek Mr. Corriveau's application file at companies where he sought to work and at the recruiting company that assisted him with finding work.  The information sought from these thirteen entities is relevant to the case, most critically to Mr. Corriveau's efforts to mitigate damages.  Although the subpoenas are not time-limited on their face, the nature of Mr. Corriveau's interaction with the nonparties was not long-term.  Therefore,

Mr. Corriveau's motion to quash with respect to the other thirteen document subpoenas is DENIED.

### C.  Deposition Subpoenas

The deposition subpoenas were served on Robyn Wolf, Mr. Corriveau's recruiter, and Jennifer Corriveau, Mr. Corriveau's wife.  ECF No. 32 at 2.  Mr. Corriveau identified them as witnesses, both at his deposition and in his answers to interrogatories.  ECF No. 39 at 1.

Ms. Wolf's deposition has already taken place.  *Id.* at 14.  She was served with the subpoena, raised no objections, and voluntarily appeared.  *Id.* at 16.  Mr. Corriveau's counsel filed a non-emergency motion less than twelve hours before the deposition and did not contact FM Global's counsel to request a stay.  *Id.*  Moreover, Mr. Corriveau has not persuaded the Court that her deposition exceeded the scope of discovery or was an undue burden.  *See* ECF No. 32 at 10.  As such, Mr. Corriveau's motion as to Ms. Wolf's deposition is DENIED AS MOOT.

Mr. Corriveau has stated that his wife Jennifer Corriveau will be a witness yet opposes her being deposed.  Although the marital communications privilege may allow her to refuse to answer certain questions, it does not prevent the deposition from going forward.  FM Global may depose her and question her on topics that will not elicit communications that are privileged.  Mr. Corriveau's motion to quash the deposition of Jennifer Corriveau is DENIED.

### D.  Protective Order

Mr.  Corriveau alternatively seeks a protective order limiting the scope of any productions or depositions not quashed. ECF No. 32 at 2.  Federal Rule of Civil Procedure 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  For the reasons above, Mr. Corriveau has not demonstrated good cause for a protective order in connection with the remaining 13

document subpoenas or the deposition subpoenas.  As such, his alternative request for a protective

over is DENIED.

## II.    Plaintiff's Motion to Compel Discovery

Mr. Corriveau moves to compel FM Global to provide complete responses to Interrogatory

Nos. 3, 7, 13, 14, 19 and 20 as well as Requests for Production (RFP) Nos. 4, 6, 7, 8, 12, 13, 14,

and 16.  ECF No. 33.  FM Global objects, generally contending the discovery is "an improper

fishing expedition" seeking information to which Mr. Corriveau is not entitled.  ECF No. 38 at 1.

### A.  Standard

Federal Rule of Civil Procedure 37(a)(3)(B) permits a party to move to compel a discovery

response when a party fails to answer or fails to produce documents.  Mr. Corriveau, the party

seeking to compel discovery, bears the initial burden of showing that the requested discovery is

relevant and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1); see *TG Plastics*

*Trading, Co. v. Toray Plastics*, C.A. No. 09-336S, 2010 WL 936221, at *2 (D.R.I. Mar. 12, 2010).

"If the moving party makes a showing of relevance, the burden shifts to the objecting party to

show that a discovery request is improper*." DMO Norwood LLC v. Kia Am., Inc.*, 691 F. Supp.

3d 252, 257 (D. Mass. 2023).

### B.  Interrogatory No. 3

In his motion in connection with Interrogatory No. 3, Mr. Corriveau seeks an order that

"FM to produce, for all U.S. employees who submitted religious or medical exemption requests

from the policy's inception through January 2023: employee ID numbers, job titles, dates of

employment, type of exemption requested, outcome (approved or denied), any accommodation

afforded, department/division, and reporting supervisor."  ECF No. 33 at 5.  FM Global objects to

producing information about medical exemptions because Mr. Corriveau did not seek a medical

5

exemption and further objects to producing information that goes beyond Mr. Corriveau's department.  ECF No. 38 at 8-9.

In terms of information about medical exemptions, Mr. Corriveau contends that "this information is necessary to evaluate whether FM applied different standards to religious and medical accommodation requests."  ECF No. 33 at 5.  FM Global responds that this "logic is seriously flawed given that the law requires a different legal analysis and wholly separate legal standard for religious and medical accommodation requests."  ECF No. 38 at 8 n.1 (citing *Hall v. Sheppard Pratt Health Sys., Inc*., 749 F. Supp. 3d 532, 550 (D. Md. 2024), *aff'd*, 155 F.4th 747 (4th Cir. 2025) ("the standard for disability accommodation is different than that for religious accommodation.") and *Speer v. UCOR LLC*, No. 3:22-CV-426, 2023 WL 7305037, at *2 n.4 (E.D. Tenn. Nov. 6, 2023) ("Insofar as Plaintiffs argue that it is discrimination for Defendant to treat religious-exemption requests differently from disability-exemption requests, the standards for religious accommodation and disability accommodation are different.")).  As such, FM Global should have applied different standards, so individuals making medical exemption requests are not appropriate comparators and therefore not relevant.

As to whether Mr. Corriveau is entitled to evidence beyond his department, he contends "the exemption process was administered company-wide by Corporate HR—as FM itself confirmed in its answer to Interrogatory No. 8—the relevant comparators are all employees who submitted religious [] COVID-19 exemption requests, not merely those on Plaintiff's 12-person team."  ECF No. 33 at 5.[2]  In support of his request for company-wide discovery, Mr. Corriveau

---

[2] Interrogatory 8 asked "who reviewed requests for an exemption from the COVID-19 vaccination policy," and FM Global responded "Human Resources in consultation with Legal Counsel reviewed Plaintiff's request for an exemption from FM's Vaccination Policy."  ECF No. 38-1 at 11-12.

relies on *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) for the proposition that "[t]he question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is *fact based and depends on many factors*, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." (Emphasis added.)

FM Global counters "that requests seeking discovery in disparate treatment cases must be limited to the 'same unit or division and *decisionmakers who allegedly discriminated against a plaintiff*.'" ECF No. 38 at 6 (quoting *Brandt v. Fitzpatrick*, No. 1:15-CV-00461-NT, 2017 WL 3841652, at *3 (D. Me. Sept. 1, 2017) (emphasis added)). Here, Mr. Corriveau contends that the decisionmakers who allegedly discriminated against him were "Corporate HR," ECF No. 33 at 5, and that FM Global has confirmed that it was "Human Resources in consultation with Legal Counsel [that] reviewed Plaintiff's request for an exemption from FM's Vaccination Policy." ECF No. 38-1 at 12.

FM Global further relies on a string of cases where discovery in disparate treatment cases was limited to the plaintiff's work unit. ECF No. 38 at 6-7. None, however, is similar to the facts alleged by Mr. Corriveau and the facts provided by FM Global itself. For example, although *Aponte-Navedo v. Nalco Chemical Co.*, 268 F.R.D. 31, 37 (D.P.R. 2010), contains the general proposition that "Discovery in disparate treatment cases has been limited to employees within certain work units and who have suffered similar treatment as the plaintiff," the court opens the door to discovery going "beyond his work unit" if there's "a valid need to do so." Here, Mr. Corriveau alleges that he was terminated following his denial of a request for a religious exemption and that decision was made by HR in consultation with Legal Counsel, evidencing "a valid need to" open the door to discovery "beyond his work unit." In *Sallis v. Univ. of Minn.*, 408 F.3d 470, 477-78 (8th Cir. 2005), the plaintiff's "allegations of discrimination focus on the

7

behavior of the supervisors," and the court noted that "where there is no showing of the need for regional or nationwide discovery," discovery has been limited to "company records [at] the local facility where plaintiff was employed."  Here, Mr. Corriveau has not alleged discrimination at the hands of his supervisors, and he has made a "showing of need" for company-wide discovery.  And in *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 313-15, 20 (7th Cir. 2003), where it was not an abuse of discretion to limit discovery "to the relevant corporate department, similarly situated employees, time period, and decisionmakers," the plaintiff was terminated by his supervisor who was dissatisfied with many aspects of his work.  Here, Mr. Corriveau does not allege termination by a dissatisfied supervisor but rather asserts religious discrimination at the hands of Corporate HR who he contends was the decisionmaker for the entire company on requests for exemptions from the COVID-19 Vaccination Policy.

In this case, the decisionmaker for the company-wide COVID-19 policy who allegedly discriminated against Mr. Corriveau was the company's HR department, not Mr. Corriveau's supervisor or anyone in Mr. Corriveau's 12-person department or division.  Focusing on the allegations of discrimination at the hands of Corporate HR bolstered by FM Global's response that the decisionmakers denying his religious exemption were Human Resources in consultation with Legal Counsel and the tiny size of his work unit, Mr. Corriveau has demonstrated a valid need to expand discovery beyond his small team to the entire company.  Evidence of how the religious exemption was handled by Human Resources in consultation with Legal Counsel for employees

throughout FM Global is both relevant and proportional[3] to the needs of Mr. Corriveau's case. FM Global has not met its burden to show this discovery is improper.[4]

Mr. Corriveau's motion to compel regarding Interrogatory No. 3 is GRANTED IN PART and DENIED in part: FM Global shall produce, for all U.S. employees who submitted religious exemption requests from the COVID-19 Vaccination Policy's inception through January 2023: employee ID numbers, job titles, dates of employment, outcome (approved or denied), and any accommodation afforded.

### C.  Interrogatory No.  7

In connection with Interrogatory No. 7, Mr. Corriveau seeks an order requiring FM Global "to supplement its answer to include company-wide data on total numbers of religious and medical exemption requests, grants, and denials, covering policy inception through January 2023." ECF No. 33 at 6. FM Global objects on the grounds that it seeks information pertaining to medical exemptions and company-wide information. ECF No. 38 at 12-13. As discussed above, company-wide information is relevant and proportional but medical exemptions are not. Therefore, Mr. Corriveau's motion as to Interrogatory No. 7 is GRANTED IN PART and DENIED in part:

---

[3] FM Global argues in general that the discovery requests at issue in the motion are disproportional to the needs of the case. ECF No. 38 at 5-6. While FM Global does not offer any specifics about proportionality in connection with Interrogatory No. 3, the Court notes that FM Global determined that exemptions to its COVID-19 Vaccination Policy should be handled by its Human Resources in consultation with Legal Counsel. Because FM Global has not asserted anything to the contrary, the Court infers that the information sought in connection with Interrogatory No. 3 is largely with Human Resources. Moreover, the Court is ordering FM Global to provide information during a short period of time and pertaining only to individuals who sought a specific exemption to the COVID-19 Vaccination Policy. For these reasons, the Court finds that the discovery ordered in connection with Interrogatory No. 3 is proportional to the needs of the case.

[4] Another court in this circuit has ordered similar discovery where a plaintiff seeks "information about general company practices in order to demonstrate a pattern of discriminatory conduct." *See Sanchez-Medina v. UNICCO Serv. Co.*, 265 F.R.D. 24, 27, 29 (D.P.R. 2009).

FM Global shall supplement its answer to include company-wide data on total numbers of religious exemption requests, grants, and denials, covering policy inception through January 2023.

### D.  Interrogatory Nos. 13 and 14

Mr. Corriveau seeks information pertaining to lawsuits and complaints alleging religious discrimination in connection with FM Global's COVID-19 Vaccination Policy.  ECF No. 33 at 6. FM Global contends that he is entitled only to discovery pertaining to employees in his own department, making religious discrimination claims, for a period of three years.  ECF No. 38 at 10-12.  Given the request is for COVID-19 Vaccination Policy exemptions, the Court finds the "January 2020 to present" time period appropriate.  ECF No. 33 at 6.  Based on the analysis above, Mr. Corriveau's motion as to Interrogatory Nos. 13 and 14 is GRANTED IN PART and DENIED in part:  FM Global shall identify all lawsuits, charges, and administrative complaints filed from January 2020 to present alleging religious discrimination related to FM's COVID-19 Vaccination Policy, providing for each: caption/charging party, forum, docket number, and date filed; documents may be redacted to protect third party privacy.

### E.  Interrogatory Nos. 19 and 20

Mr. Corriveau seeks an order compelling FM Global to serve supplemental answers confirming whether a mandatory return-to-office date existed during the relevant period, information he contends FM Global stated it would provide.  ECF No. 33 at 6.  FM Global responds that is "amenable to supplementing its answers to these Interrogatories to provide that no such mandatory return to work date(s) exist."  As such, Mr. Corriveau's motion regarding Interrogatory Nos. 19 and 20 is DENIED AS MOOT.

### F. RFP No. 4

Mr. Corriveau objects to FM Global's response to RFP No. 4 that he should "see all documents produced." ECF No. 33 at 6-7. He seeks an order requiring FM Global "to produce an itemized index of documents produced in response to RFP No. 4, organized by category with corresponding Bates ranges," but provides not authority for this proposition. *Id.* at 7. FM Global responds that RFP No. 4 "seeks a broad array of documents related to Plaintiff 'in any way'" and lists the categories of documents it has produced that refer to or relate to Mr. Corriveau. ECF No. 38 at 14.

RFP No. 4[5] "does not specify a form for producing electronically stored information," so FM Global "must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. Pro. 34(b)(2)(E)(ii). As such, Mr. Corriveau's motion regarding RFP No. 4 is GRANTED IN PART and DENIED IN PART: FM Global is ordered to provide documents responsive to RFP No. 4 "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."

### G. RFP Nos. 6, 7, 8, and 12

In RFP Nos. 6, 7, 8, and 12, Mr. Corriveau seeks documents pertaining to FM Global's COVID-19 Vaccination Policy, which is at the heart of his case. ECF No. 33 at 7. He contends that FM Global has improperly limited its production to his department and seeks an order compelling company-wide information.

---

[5] Request for Production No. 4: "Produce any and all documents which relate or refer in any way to the Plaintiff in the above captioned matter, including but not limited to personnel records, all contracts entered into, etc., as well as shift scheduling records, receipts, paystubs, wage records, tax records, emails, text messages, and any other documents relating to Plaintiff's work (including hiring, suspension, discipline, and termination) at Defendant." ECF No. 40-1 at 6.

For RFP No. 6, Mr. Corriveau does not further specify the relief he seeks and FM Global does not address RFP No. 6. RFP No. 6 seeks "any and all documents related to any and all complaints, statements, or inquires made by any employee or person regarding Defendant's policies and practices with respect to hiring, firing, and performance of employees." ECF No. 40-1 at 6. This request is far broader than the allegations in this case as it is not limited to the COVID-19 Vaccination Policy, it is not proportional to the needs of the case, and it would be unduly burdensome. Furthermore, Mr. Corriveau fails to specify how FM Global's response was deficient other than his general statement that these four requests were improperly limited to his department. As such, Mr. Corriveau's motion regarding RFP No. 6 is DENIED.

In terms of RPF No. 7, FM Global contends that it "has produced voluminous documents in response to Request No. 7" and Mr. Corriveau "has failed to indicate how FM's response to Request No. 7 is deficient." ECF No. 38 at 16-17. As to RFP No. 7, Mr. Corriveau's motion is GRANTED IN PART and DENIED IN PART: FM Global shall produce a record of all decisions made regarding religious vaccine exemptions to the COVID-19 Vaccination Policy granted or denied by FM Global and religious accommodation requests to the COVID-19 Vaccination Policy granted or denied by FM Global, as well as a record of all individuals suspended or terminated because of the COVID-19 Vaccination Policy.

Regarding RFP No. 8, FM Global objects to providing documents pertaining to medical exceptions and again contends that only information pertaining to Mr. Corriveau's department is relevant. *Id.* at 12-13. As to RFP No. 8, Mr. Corriveau's motion is GRANTED IN PART and DENIED IN PART: FM Global shall produce all termination letters sent to employees for non-compliance with the FM Global's COVID-19 Vaccination Policy (redacted for privacy);

12

documents reflecting the number of employees terminated for non-compliance with the COVID-19 Vaccination Policy; and documents reflecting the number of religious exemptions granted.

For RFP No. 12, FM Global contends that it is "the epitome of an overbroad request as it seeks all documents relating to any formal and/or informal complaints, lawsuits, claims, grievances, administrative actions, charges, or investigations made with respect to the payment of wages. Plaintiff's case has absolutely nothing to do with the payment of wages." *Id.* at 10. As to RFP 12, Mr. Corriveau's motion is GRANTED IN PART and DENIED IN PART: FM Global shall produce all complaints, charges, or investigation files related to religious discrimination or failure to accommodate religion, or religious discrimination related to the COVID-19 Vaccination Policy, from January 2020 to present, redacted as needed to protect third-party privacy.

### H.  RFP Nos. 13 and 14

In connection with Request Nos. 13 and 14, Mr. Corriveau seeks an order that FM Global "produce, for the period January 1, 2020 through June 30, 2022: all communications between Plaintiff and FM employees regarding the COVID-19 policy, his exemption request, and his termination; all internal FM communications about his exemption request and termination; and his personnel file, performance reviews, and disciplinary records." ECF No. 33 at 6-7. FM Global does not provide a position on RFP Nos. 13 and 14**.**

RFP Nos. 13 and 14 seek communications including Mr. Corriveau and communications about Mr. Corriveau; the requests are relevant and proportional. Mr. Corriveau's motion regarding RFP Nos. 13 and 14 is unopposed and GRANTED.

### I.  RFP No. 16

For RFP No. 16, Mr. Corriveau seeks the same relief he sought for Interrogatory No. 3 and does not explain what was deficient about FM Global's response. ECF No. 33 at 8. In its response

13

to the RFP, FM Global stated that it would confer with Mr. Corriveau regarding the scope of the request. ECF No. 38-2 at 15. In its objection to the motion, FM Global contends only that the request is overly broad and asks the Court to "limit the scope of [] Request No. 16 to a list of employees from at the time of Plaintiff's termination that worked in the same department as Plaintiff and under the same supervisor." ECF No. 38 at 8-9.

Mr. Corriveau's motion as to RFP No. 16 is GRANTED IN PART and DENIED IN PART: FM Global shall produce a list of all the employees in Plaintiff's department during the relevant period, including their names, dates of employment, contact information, COVID-19 vaccination status, and approval or denial of COVID-19 Vaccine Policy religious exemptions and/or accommodations, and specific accommodation afforded to them.

### III.    Conclusion

As detailed above, Plaintiff's Motion to Quash Subpoena Duces Tecum and, in the Alternative, Motion for Protective Order (ECF No. 32) is GRANTED IN PART and DENIED IN PART and Plaintiff's Motion to Compel Discovery (ECF No. 33) is GRANTED IN PART and DENIED IN PART.


 /s/   Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

July 7, 2026

14